SOLOMON MORRIS, Respondent, *v.* SADYE R. MORRIS, Individually and as Administratrix, etc., of HARRY MORRIS, Deceased, and Others, Appellants.*

Third Department, December 30, 1931.

* Affg. 138 Misc. 682.

*Dugan & Bookstein,* for Sadye R. Morris, individually and as administratrix, etc.; *Norman M. Beck,* guardian *ad litem* for Sylvia F. Morris and Joseph M. Morris, infants [*Daniel J. Dugan, Isadore Bookstein, Avrom M. Jacobs* and *Norman M. Beck* of counsel], for the appellants.

*Roche, Tierney & Roche* [*P. C. Dugan* of counsel], for the respondent.

RHODES, J. Two separate appeals are taken, one by the defendant Sadye R. Morris, individually and as administratrix of Harry Morris, deceased; the other in behalf of Sylvia F. Morris and Joseph M. Morris, infant children of said Harry Morris. There is substantially no dispute as to the facts.

Plaintiff and his son, said Harry Morris, deceased, were associated in business in Schenectady under the trade name of S. Morris & Son. While at work in said place of business the son met his death by a fall down an elevator shaft January 8, 1925. An insurance policy had been issued providing for compensation to the employees engaged in the business, the said policy showing upon its face that S. Morris & Son was a copartnership. After the death of said son a dispute arose between the wife and plaintiff as to whether the deceased was an employee or a copartner in the business. A claim having been presented to the Industrial Board for compensation, and upon the statement of the attorney for the widow that no claim for compensation was to be made, and upon a determination by the Board that the deceased was a member of the firm, the claim was dismissed. Thereafter and after considerable negotiations between the parties represented by attorneys, an agreement was entered into consisting of two separate papers, one described as an agreement, the other as a release. By the terms of said so-called agreement which was executed by said Sadye R. Morris in her capacity as administratrix only, it was recited, among other things, that it was the contention of the plaintiff that the deceased was employed by plaintiff and received the sum of thirty-five dollars per week as wages and forty per cent of the net earnings of the business as a bonus in addition to wages, and that the deceased at the time of his death was entitled to the sum of $1,400 in full for all wages and earnings from the commencement of his employment to the date of his death and that the said widow, as administratrix of said deceased, was not certain as to the amount due the estate of said deceased from plaintiff by reason of said employment and was under the impression that the accumulated wages and earnings amounted to more than the sum of $1,400; that the parties desired to compromise, settle and adjust the claim

of the deceased against the plaintiff; that in consideration of one dollar and the mutual promises and agreements therein contained, plaintiff agreed to pay to said administratrix the sum of $1,400 in cash and in addition thereto the further sum of fifty dollars per week for eight years, payable to said administratrix weekly, and in the event of the remarriage of said administratrix before the expiration of said eight years, the sum of fifty dollars to be reduced to the sum of thirty-three dollars and fifty cents per week commencing with said remarriage; said weekly payments to be used by said administratrix for the maintenance of her home and support, care and education of the infant appellants herein. It was further provided in the paper described as the agreement, that " this agreement shall in no manner affect the right of the said Sadye R. Morris, as administratrix, to apply for compensation under the Workmen's Compensation Act for the death of the said Harry Morris, deceased."

The so-called release executed by said Sadye R. Morris individually and as administratrix, purports to release the plaintiff from any and all claims in behalf of herself, her heirs, executors and administrators, which she ever had, now has or which she or her successors hereafter can, shall or may have upon or by reason of the death of the said Harry Morris, and from any and all compensation which may be due or become due under the Workmen's Compensation Law by reason of said death, and she " agrees that any matter contained in the agreement entered into this day between Sadye R. Morris, as administratrix of the goods, chattels and credits of Harry Morris, deceased, and Solomon Morris is not intended to, nor shall be construed as in any manner affecting or waiving the provisions of this release." Upon the execution of these papers the said administratrix procured an order of the Surrogate's Court based upon the so-called agreement only, confirming such settlement and thereupon and thereunder the plaintiff made payments as stipulated in the agreement amounting to $8,750 until the 17th day of December, 1928, on which date he discontinued the payments on the advice of his counsel.

On December 23, 1925, the said Sadye R. Morris instituted further proceedings before the State Industrial Board for compensation, and at the hearings plaintiff was present as a witness. In said proceeding, upon the facts then presented, the Industrial Board made an award against plaintiff as a non-insured employer of $10.386 per week to the widow and $3.462 per week to each of the two children, which amounts were much less than the stipulated payments under the agreement. Thereafter, on March 21, 1928, the Industrial Board converted the amount payable into a lump

sum award of $14,379.67, upon which a judgment was entered in favor of the Commission in Schenectady county clerk's office June 9, 1928, and an execution was issued thereon August 8, 1928, which was returned to the sheriff as satisfied on November 16, 1928, the amount collected on such execution including interest, poundage and other expenses, being $14,965.80.

Plaintiff brought this action January 14, 1929, seeking equitable relief and asking that the said agreement be modified and changed so as to give credit for payments thereon in the sum of $8,750 already paid by the plaintiff, and also the sum of $14,965.80, being the amount of award paid by plaintiff to the Industrial Board, to the end that the terms of the agreement and release and the understanding of the parties be equitably adjusted and carried out and for such other and further relief as to the court should seem just and proper.

The answer of the defendant Sadye R. Morris, individually and as administratrix, sets up separate defenses, one being that the attempted release is null and void and entirely inoperative to release plaintiff from the obligation imposed upon him by the Workmen's Compensation Law, and also sets up a counterclaim for the unpaid installments under said agreement to the time of the service of the answer, amounting to $500.

The answer of the infants submits their rights to the protection of the court.

The decision of the court, after reciting the above facts, states that it was never contemplated by the parties to said agreement that the plaintiff should pay more than the total amount stipulated therein and that it was never contemplated that plaintiff should in addition thereto pay compensation to the widow and children of his deceased son; that said judgment and the collection thereof constituted a fraud upon the plaintiff. In his opinion the court states that although the release was originally void, defendant is now equitably estopped from impeaching it. A judgment has been entered restraining the defendants from instituting any further action or proceeding to enforce collection of any further payments under the agreement until after such time has elapsed, during which time the payments in said agreement provided for and not already made will equal the amount collected from plaintiff by virtue of the execution issued on the judgment entered against him on the lump sum award made by the State Industrial Board. It is from such judgment that the defendants appeal claiming that plaintiff has failed to establish facts warranting the exercise of equity jurisdiction; that equity is without power to grant the relief sought; that plaintiff is not entitled to the equitable intervention of the court;

that the granting to the plaintiff of the relief sought would be tantamount to interposing the terms of an illegal agreement; that equity has no power to aid the plaintiff in the absence of showing mutual mistake or mistake coupled with fraud; and that plaintiff has an adequate remedy at law.

The finding of the court below is undoubtedly correct to the effect that it was never contemplated by the parties that the plaintiff should pay more than the total amount stipulated in the agreement. It is apparent that both parties intended that any further sums which might be procured through the instrumentality of the State Industrial Board were to come only from the coffers of the insurance carrier if this could be accomplished; otherwise that no further liability would attach to the plaintiff. But like many another argonautic enterprise, the plans went wrong.

The serious question here is whether the provision in the release which attempts to exempt plaintiff from all claims which said Sadye R. Morris may have against the plaintiff from any and all compensation which may be due or become due under the Workmen's Compensation Law, is illegal and void. Unquestionably under sections 32 and 33 of said law any attempted release of plaintiff's liability thereunder is prohibited and would be illegal and void. But an examination of the agreement and release discloses that the plaintiff was not attempting to be released from his liability and obligations under that law. Furthermore, he has not evaded such liability for he has paid the award in full, in addition to the payments under the agreement. With the exception of the $1,400 which plaintiff paid, being the amount which he claimed was due and owing as wages and bonus to the deceased at the time of his death, the other payments provided by the agreement are *in futuro* and are to be made in weekly installments in excess of the amount payable under the Workmen's Compensation Law. It has been held that where a claimant receives his full wages during the time of disability, he is not entitled to an award of compensation. (*Rasmussen* v. *Park G. & M. Shop, Inc.*, 223 App. Div. 591; *Sullivan* v. *Seely Son, Inc.*, 226 id. 629; *Griffin* v. *Cruikshank Co., Inc.*, 227 id. 831.)

Upon the facts here presented it may be fairly assumed that the future payments called for by the agreement of the parties were to cover the liability of the plaintiff under the Workmen's Compensation Law and to be considered as payments on account of said liability to the extent that such liability might be established and further that any application to the Industrial Board should be directed to enforcing the liability of the insurance carrier only. An additional finding to this effect should be made. Plaintiff

simply asks that any excess payments over and above the amount of liability under the Workmen's Compensation Law, and over and above the additional amounts to be paid under the agreement, be held in abeyance until such time as the payments due under the agreement shall be in excess of the payments already made. There is nothing illegal, improper or inequitable in this position; in fact it is what the parties contemplated and agreed to and it deprives the defendants of none of their rights under the Workmen's Compensation Law.

Such a position does not require any change, alteration or amendment of the agreement made between the parties. The contract, consisting of the so-called agreement and the release, is inconsistent on its face, thus creating ambiguity as to which parole evidence is proper to explain the meaning of the parties. In the light of the explanation appearing in the record, the intention of the parties is clear and supports plaintiff's contention. It would be inequitable to compel plaintiff to pay more than the amounts specified in the agreement, which amounts were intended to include whatever liability there might be under the Workmen's Compensation Law.

It appears from the record that in addition to the payments contemplated between the parties the plaintiff has voluntarily donated to the widow $10,000 payable to plaintiff upon a policy of insurance covering the life of the deceased. While this in no way enters into the controversy here, it certainly indicates that plaintiff has not been animated by a purpose to overreach or take advantage of the rights of the defendants.

The position taken by the widow is inconsistent. She stands on the contract and by her counterclaim seeks to recover unpaid installments. In the same breath she asserts that the contract is illegal and void. She cannot maintain her cause by clinging to these antagonistic positions.

If these conclusions are correct, then the first conclusion of law contained in defendants' requests that the attempted release of the claim for death benefits was contrary to law, illegal and void, is unnecessary and should be disapproved. In any view of the case the equities are with the plaintiff and the result reached by the trial court is correct.

The judgment appealed from should be affirmed, with costs against the defendant Sadye R. Morris, as administratrix aforesaid.

All concur, except HILL, J., who dissents, with an opinion.

HILL, J. (dissenting). Harry Morris came to his death on January 8, 1925, through accidental injuries received on the

premises where a mercantile business was conducted under the name of " S. Morris & Son." Decedent was survived by a widow and two infant children, the defendants in this case. He was the " Son " mentioned in the above business name; plaintiff, his father, is the " S. Morris." The divergent claims of the plaintiff that decedent was an employee, and of the widow that he was a partner, were adjusted by a written contract providing for the payment of a sum of money by the plaintiff to the widow, for the benefit of herself and the infants. Part payment was to be made immediately, the balance in weekly installments. The contract provided in substance that nothing therein contained should prevent the dependents of the decedent from applying for and obtaining an award under the Workmen's Compensation Law. However, a release given by the widow to the plaintiff, executed on the same day, by its terms released plaintiff " from any and all compensation which may be due or become due under the Workmen's Compensation Law by reason of said death." After the date of the contract an award against the plaintiff as an uninsured employer was obtained by the widow for herself and the dependent infants. The bi-weekly payments were commuted into a lump sum and judgment docketed and collected by execution against the plaintiff. He filed this suit in equity for, and a judgment has granted relief from future weekly payments under the contract to the amount of the commuted award and restrained the defendants from prosecuting an action or actions at law for the installments as they mature. Both the widow and the infants appeal.

During the negotiations that led up to the execution of the above instrument, plaintiff contended that decedent was his employee, receiving a fixed salary of thirty-five dollars a week, to be increased by the payment of a bonus equal to forty per cent of the net profits of the business, while the widow contended, until about the time the contract was made, that he was a partner with a drawing account of thirty-five dollars a week and the owner of forty per cent of the assets of the business, receiving the percentage of profits not by way of salary or bonus, but through such part ownership. The mercantile business was insured under the Workmen's Compensation Law in the name of " Solomon Morris & Son " as a copartnership consisting of Solomon Morris and Harry Morris. The weekly payments of thirty-five dollars which had been made to decedent were not included in the payroll upon which the premium for this policy was computed. Plaintiff gave the usual employer's notice to the Industrial Commission on March 9, 1925, which recited the death of his son through falling down an elevator shaft. A hearing was held on May 7, 1925, whereat the

claimant, the employer and the carrier were each represented by separate counsel. The hearing was adjourned without the taking of proof, first to June second and later to June twenty-ninth following. On the latter date the Commissioner is reported as saying, " this being the third hearing and the clerk in the office of the firm representing the claimant understanding that there is to be no claim made by Mrs. Morris and that the deceased was a member of the firm, the case is dismissed without prejudice." About this time the negotiations which terminated in the contract were begun. Apparently the widow was convinced that her husband· had been an employee for the contract recites that decedent was " employed by said Solomon Morris." Plaintiff admitted that decedent's unpaid salary amounted to $1,400, while the widow claimed a much larger sum, and that there had never been an adjustment in relation to the bonus. The contract purports only to adjust that question and in terms reserved to the widow and dependents the right to have recourse to the Workmen's Compensation Law. The contract, but not the so-called release, was presented to the surrogate of Schenectady county for his approval. This must have been done on the assumption that it contained all the provisions incident to the settlement between the parties, for if it was necessary to the legality of the instrument, as these parties assumed, that it be approved by this official, he would not be asked to approve a settlement when the instrument presented did not correctly state its terms.

The only duty which this release should perform is to show that the differences between the parties have been settled by the terms of the contract; but in so far as it purports to change those terms, it should be disregarded. Assuming, without agreeing, that the two instruments must be read together, and that by so doing it discloses that the real agreement between the parties was that the · payments made and to be made by the plaintiff to the widow were in consideration of her agreement not to apply for an award under the Workmen's Compensation Law, still such a provision should be expunged from the agreement, for an employer may not settle and adjust death benefits by dealing directly with the dependents and without having recourse to the Industrial Commission (Workmen's Comp. Law, § 33) and the illegal part of the agreement is severable from the legal, and the latter may be upheld. (*Leavitt* v. *Palmer*, 3 N. Y. 19; *Central N. Y. Tel. & Tel. Co.* v. *Averill*, 199 id. 128; *Saratoga State Waters Corp.* v. *Pratt*, 227 id. 429, 441.) The beneficiary and employer who seek to make an illegal contract to evade the payment of death benefits are not *in pari delicto*. (Workmen's Comp. Law, §§ 11, 26, 33, 52.) The defendant widow

is not the wrongdoer under the assumption that the agreement was made with the intent of evading the Workmen's Compensation Law. She may enforce the valid parts of the contract. (*Saratoga County Bank* v. *King*, 44 N. Y. 87; *Irwin* v. *Curie*, 171 id. 409.)

It has been suggested that the real purpose in the minds of the contracting parties and their attorneys was to draft instruments that would reflect the agreement between them to be that the plaintiff should make payments in accordance with the terms of the contract (that instrument being part 1 of the agreement and the release part 2 thereof), and that the decedent's dependents might apply for and obtain an award for death benefits and have and enjoy the payments if they were made by the insurance company, but if perchance there was any slip so that the carrier was released, then the dependents would forego all right to award under the Workmen's Compensation Law. Such proposition and agreement would be illegal. The liability of an employer for compensation to an injured employee or to the dependents of one who had died as a result of injuries is not lessened or abrogated by failure to insure or through failure to so contract with the carrier that the policy included and covered the risk. It may not be assumed that there was an intention of the parties to violate the law through the terms of the agreement (*Lorillard* v. *Clyde*, 86 N. Y. 384), and an agreement should be adjudged to be valid where there is a construction which will uphold it. The acts of the parties indicate a valid intention. The plaintiff had sought to comply with the Workmen's Compensation Law by obtaining insurance. He was required to know that its terms should cover the risk as to each employee. Under the conditions claimed by him, this would include the decedent. He believed that the policy did cover his son. Agreeably he sent an employer's notice of injury and death to the State Industrial Board indicating a belief that the carrier and himself were within the purview of the act. The widow, relying upon the statements of her father-in-law, presented a claim, which she ceased to prosecute at the time she came to believe that her deceased husband had been a partner and not an employee, and she and her counsel so stated, as reported by the Board. She entered into negotiations of settlement assuming a partnership, the plaintiff claiming the son was an employee (and incidentally that the assets of the business belonged to plaintiff). The contract indicated that the plaintiff was right as to the relations, and that the consideration for the payments was the accrued and accumulated unpaid salary. Under this assumption the widow, as stated in the contract, reserved, as she was required, her privilege to seek compensation for the benefit of herself and for the infants. The

antagonistic statements in the release as to liability for compensation were inserted through a spasm of over-cautiousness on behalf of the plaintiff, and not with an intent to do an illegal act.

Plaintiff is seeking an equitable remedy because of the terms of the so-called release. From this document the court is invited to find that a wrong has been done which law cannot remedy, and that justice and public policy support the demand for relief. A document with its history, prepared for the purposes accredited by its friends, should not be the basis for equitable relief. At the time of its execution, plaintiff was told that he should keep it in his safe, and there it remained impugning the terms of the contract which was shown to the surrogate as stating all the terms of the agreement which involved the rights of the widow and children of decedent. Assuming that it is to be given the effect asked by the plaintiff, the authority and power of the State Industrial Board has been flouted. Neither justice nor public policy demands that the provisions of this secret instrument should be read into the public contract.

I favor a reversal of the judgment and the findings in accordance with this opinion.

Judgment affirmed, with costs against the defendant Sadye R. Morris, as administratrix.

This court makes an additional finding of fact, as follows:

The future payments called for by the agreement of the parties were to cover the liability of the plaintiff under the Workmen's Compensation Law and to be considered as payments on account of said liability to the extent that such liability might be established, and further that any application to the said Industrial Board should be directed at enforcing the liability of the insurance carrier only.

This court disapproves the first conclusion of law contained in defendants' requests.