PEOPLE ex rel. GEORGE H. McEVOY, Relator, *v.* EDWIN DUFFEY, as Commissioner of Highways of the State of New York, Respondent.

(Supreme Court, Albany Special Term, June, 1918.)

Mandamus — when application for writ of, denied — highways — contracts — statutes — Highway Law, § 132, as amended by Laws of 1918, chap. 413 — Laws of 1918, chap. 585.

Under section 132 of the Highway Law, as amended by chapter 413 of the Laws of 1918, in effect May 1, 1918, the state commissioner of highways is authorized to suspend or defer operations on certain highway contracts upon the request

of the contractor and his surety during the war, but not exceeding two years. Chapter 585 of the Laws of 1918, in effect May 9, 1918, authorizes the state to cancel and annul any contract for the construction of public works if a stipulation is filed by the contractor in the statutory form. Upon an application by relator for a writ of mandamus to compel the cancellation and annulment of a certain uncompleted contract held by him for the construction of a public highway, *held,* that the legislature by the earlier statute intended to confer a discretion upon the public authorities with respect to public contracts and did not intend that every contract for public work which the state had could be canceled or annulled simply upon the demand of the contractor or his surety and that the respondent having answered that he intends to act under said earlier statute, which he deems to be fair, just and equitable for both parties to the contract, the application for the writ will be denied.

APPLICATION for peremptory writ of mandamus.

Brackett, Todd, Wheat & Wait (Benjamin P. Wheat and E. Raymond Shepard, of counsel), for relator.

Merton E. Lewis, Attorney-General (A. E. Rose, Deputy Attorney-General), for respondent.

CHESTER, J.   The relator by this proceeding seeks to compel the cancellation and annullment of a certain uncompleted contract held by him for the construction of a public highway in the village of Rosendale, Ulster county. The proceeding involves the construction of chapter 585 of the Laws of 1918, known as the Walters Law. Section 2 of such act provides that: " For the purpose of meeting emergency conditions in the performance of contracts for the construction of public works and meeting conditions in the employment of labor, and procuring of materials for such contracts created by the existence of war between the United States of America and the imperial

German government, and to secure control over the performance of and the expeditious completion of any such contracts by the means hereinafter provided, any state, county or municipal agency is authorized and empowered  *  *  *  if a stipulation is filed by the contractor in the form as specified in section four, to cancel and annul any contract made or advertised for letting prior to the declaration of war between the United States of America and the imperial German government, etc.''

Section 4 of such act provides that:  '' No state, county or municipal agency shall cancel and annul any contract as provided in section two of this act, unless the contractor under any such contract shall within three months after notification by the state, county or municipal agency of its intention to cancel the same, file a stipulation in writing under seal and duly acknowledged in the same manner as a deed to be recorded, providing that the contractor does agree to the cancellation of his contract,'' and also provides for certain stipulations and agreements which the contractor is required to enter into as a condition for such cancellation and annullment.

The respondent has refused to cancel the contract in question under such law and insists that the authority and power to do so conferred upon him by the law involve the exercise of discretion on his part as to whether he should permit it to be done or not. The relator on the other hand insists that the law is mandatory. There is no dispute as to the facts. This presents the question that must be determined on this application.

The language used in the statute is that the '' state, county or municipal agency is authorized and empowered  *  *  *  to cancel and annul any contract '' and the relator cites many authorities where language of

similar import in statutes has been held to be mandatory and not to confer discretion, whenever the public interests or the rights of individuals are involved. These authorities need not be referred to in detail. They were undoubtedly correct as applied to the facts of the specific cases but I do not think they control the determination of the question presented here. In determining the meaning of the words " authorized and empowered," and as to whether they are permissive or mandatory, the legislative intent must be sought from the entire act and the surrounding circumstances. *People ex rel. Otsego County Bank* v. *Supervisors of Otsego,* 51 N. Y. 401, 405.

The act in question is a general one and relates to contracts for construction of all public works in the state, including those in any county or municipality. It is broad enough to include all canal contracts and contracts for canal terminals, as well as all highway contracts. The act nowhere contains any expression showing that the initiative in obtaining the cancellation of a contract under the law is to be taken by the contractor. It does contain a provision in section 2 that contracts cannot be cancelled in any municipal corporation having more than 1,000,000 inhabitants unless the action is consented to or approved by the board of estimate and apportionment, so that contracts for public work in New York city could not be cancelled without such consent. It does not seem that the legislature intended to require the consent in that instance and give contractors elsewhere the absolute right to a cancellation against the consent of the state, county or municipal agency concerned, and section four which has been quoted shows that the legislature in express terms has provided that the *intention* to cancel the contract shall come from the state, county or municipal agency interested. That alone

very clearly shows to my mind that the legislature intended that the power and authority resting in the government agencies should be permissive and not mandatory.

The respondent states that he intends to act under chapter 413 of the Laws of 1918, commonly known as the Hewitt act, which was signed by the governor on the same day as the Walters bill. The Hewitt bill amends section 132 of the Highway Law and authorizes the state commissioner of highways to suspend or defer operations on certain highway contracts upon the request of the contractor and the surety upon his bond during the war but not exceeding two years. The respondent has elected to operate under the law in this instance which he states he deems to be fair, just and equitable both for the state and for the contractor and which law was also enacted for the purpose of meeting the critical situation confronting contractors for public work arising from the exigencies of the war.

A careful examination of chapter 585 as well as of chapter 413 of the Laws of 1918 and the surrounding circumstances, convinces me that the legislature intended by the passage of the prior act to confer a discretion upon the public authorities with respect to public contracts and that the legislature did not intend that every contract which the state or any of its municipalities had for public work could be cancelled or annulled simply upon the demand of the contractor or his surety. This view finds sanction in the authorities. In *Matter of Armstrong* v. *Murphy,* 65 App. Div. 123, and another case with the same title (Id. 126), where under the charter of New York the police department was " authorized and empowered " to grant theatre licenses and where it was held that the words " authorize and empower " do not impose upon

the police commissioner an imperative duty to grant a license upon receipt of the fee but vested in him a discretionary power which could not be controlled by mandamus. *People ex rel. Schwab* v. *Grant,* 126 N. Y. 473, is to the same effect.

It cannot be that the public interest requires the cancellation of all contracts made for the benefit of the public regardless of the circumstances underlying or surrounding the special case, nor can it be fairly said that an individual contractor for a public work has any legal right to have his contract annulled and cancelled, no matter how. much the public may suffer or be damaged by such a course, in the absence of the expression of a clear legislative intention to permit him, of his own motion, to accomplish that result. I fail to find such an intention in the statute in question here. I think on the other hand that the respondent is clothed under the law with a discretion to permit or refuse a cancellation dependent upon the facts and circumstances of the specific case. The application should be denied.

Application denied.