OPINION OF THE COURT
Sam Eisenberg, J.
The five persons who were formerly defendants in these proceedings have moved, pursuant to CPL 160.50, for the return of all fingerprints, palmprints and photographs that were taken of them at the time of their arrest. Each of them also seeks the sealing of all records that were developed as to him or her during the course of the criminal actions.
Defendant Angelo Ricci was charged in a misdemeanor information with resisting arrest, assault, third degree, and harassment. Defendant Erminia Ricci was charged in a misdemeanor information with assault, third degree. Defendant Peter Ricci was charged in a misdemeanor information with resisting arrest and assault, third degree. Defendant Vincent Ricci was charged in a misdemeanor information with disorderly conduct and resisting arrest. *104 Defendant Americo Ricci was charged in a misdemeanor information with resisting arrest. Because each of the defendants was charged with a misdemeanor, the fingerprints, palmprints and photographs of each were taken in connection with the arrests, pursuant to the mandate of CPL 160.10.
The disposition of the charges, with respect to each of the defendants, was as follows: Defendant Angelo Ricci pleaded guilty to harassment, a violation, in full satisfaction of all the charges pending against him. Defendants Peter Ricci and Vincent Ricci pleaded guilty to harassment.
The charges against defendants Erminia Ricci and Americo Ricci were dismissed after a six-month adjournment in contemplation of dismissal pursuant to CPL 170.55. However, in applying for the adjournments in contemplation of dismissal, defendants Erminia Ricci and Americo Ricci each executed a written statement waiving the right to the return of fingerprints, and the sealing of their records in these proceedings in consideration of receiving the adjournment in contemplation of dismissal (ACD).
In the consideration of the motions herein, the defendants must be divided into two categories: In the first category are the two defendants who were granted adjournments in contemplation of dismissal and whose cases were terminated pursuant to CPL 170.55. As to these defendants the office of the District Attorney concedes that the criminal proceedings were terminated in favor of the defendants within the meaning of CPL 160.50. It is the District Attorney’s position, however, that upon application for the adjournments in contemplation of dismissal, the defendants explicitly waived their rights to seek return of their fingerprints and to have their records sealed. Thus, as to defendants Erminia Ricci and Americo Ricci, the court must decided whether the waiver that they executed is to be enforced.
The second category of defendants are those who were accused of one or more misdemeanors but who pleaded guilty to violations. This category of defendants requires consideration of the difference between offenses which are *105 classified as misdemeanors and those which are classified as violations. Defendants point out that under the CPL those accused of misdemeanors are required to submit to the taking of fingerprints, palmprints and photographs, whereas those accused of violations ordinarily are not. In the jargon of the criminal process, misdemeanors are viewed as “printable” offenses while violations are said to be “nonprintable”. These defendants contend that since they have been found guilty of violations only and not of misdemeanors, their cases must be viewed as having been terminated in their favor and since the violations, of which they have been found guilty are “nonprintable” offenses, their fingerprints, palmprints and photographs should be returned to them and their records sealed. In substance, therefore, as to the defendants, Angelo, Peter and Vincent Ricci, the court must decide whether the criminal actions against them were terminated in their favor within the meaning and intent of CPL 160.50.
The court addresses itself first to the enforceability of the waivers executed by those defendants who were granted adjournments in contemplation of dismissal, of their rights to seek the remedies afforded by CPL 160.50. The court concludes that the waivers executed by Erminia Ricci and Americo Ricci are invalid and unenforceable. This view rests upon the confluence of several interrelated considerations: First, where, as here, a defendant is being asked to waive the right to the return of fingerprints in exchange for the dismissal of all charges, such a waiver is inherently coercive; second, the waiver constitutes an “impermissible condition” and third, the waiver is inconsistent with the purpose and thrust of CPL 160.50. Each of these considerations is addressed in turn.
In Garrity v New Jersey (385 US 493) the Supreme Court reversed the convictions of certain police officers who were found guilty by the New Jersey courts on the basis of certain self-incriminating statements that they had made. The self-incriminating statements were found by the Supreme Court to have been made under duress because New Jersey law provided for the automatic removal from office of a police officer who invoked his privilege against self incrimination in the face of an inquiry relating to his *106 exercise of his job responsibilities. In seeking to have the convictions upheld, New Jersey contended that the police officers waived the privilege against self incrimination upon assuming public office. Justice Douglas, writing for the court, rejected New Jersey’s contention and, instead, concluded that the waiver had been extracted under circumstances that were inherently coercive. Justice Douglas noted (p 498):
“Where the choice is ‘between the rock and the whirlpool,’ duress is inherent in deciding to ‘waive’ one or the other.
“ ‘It always is for the interest of a party under duress to choose the lesser of two evils. But the fact that a choice was made according to interest does not exclude duress. It is the characteristic of duress properly so called.’ ”
The waivers that were extracted here from defendants Erminia Ricci and Vincent Ricci were similarly given under circumstances which must be viewed as inherently coercive. The threat of criminal prosecution by the State is regarded as such a foreboding prospect by most persons that when the prosecutor agrees to withdraw the charges or dismiss the prosecution that prosecutorial decision is typically greeted with enormous relief. Given the choice between being a defendant in a criminal prosecution and waiving one’s rights under GPL 160.50, most persons would agree to the waiver as “the lesser of two evils.” But, following Justice Douglas’ observation in Garrity {supra, p 498), “‘the fact that a choice was made according to interest does not exclude duress.’ ” Accordingly, under the circumstances here the waiver must be viewed as having been made under duress.
In this regard, the case of Dziuma v Korvettes (61 AD2d 677) is instructive. In the Dziuma case the Appellate Division, First Department, ruled that a Criminal Court Judge has no right to condition the dismissal of a shoplifting charge upon an agreement by the defendant not to file a civil suit against the complainants and the police. The First Department declared (p 679) that “(t)he imposition of such a condition under the facts and circumstances [of the Dziuma case] was ‘inherently coercive.’ ”
*107 Similarly in People v Siragusa (81 Misc 2d 368) a prosecutor having agreed to grant defendant an adjournment in contemplation of dismissal subsequently decided to condition the ACD upon defendant’s agreement to release the county and the police from civil liability. The Nassau County District Court found the prosecutor’s withholding of the ACD under these circumstances to be (p 373) an “unreasonable [condition] amounting to undue pressure and an act of coercion and duress”.
The Siragusa court recalled Chief Judge Bazelon’s admonition in Dixon v District of Columbia (394 F2d 966, 968): “Of course prosecutors have broad discretion to press or drop charges. But there are limits. If, for example, the Government had legitimately determined not to prosecute appellant and had then reversed its position solely because he filed a complaint, this would clearly violate the first amendment. The Government may not prosecute for the purpose of deterring people from exercising their right to protest official misconduct and petition for redress of grievances. Moreover, a prosecution under such circumstances would be barred by the equal protection clause, since the Government employs an impermissible classification when it punishes those who complain against police misconduct and excuses those who do not.”
The District Attorney unquestionably has broad discretion to press or drop charges. But it is impermissible to exercise that discretion in the manner undertaken here. As suggested by the decision in Dixon u District of Columbia (supra) it is impermissible to deny or to condition a benefit upon the waiver of a right which has been statutorily conferred. Thus, the District Attorney cannot condition its consent to an ACD upon the waiver of one’s rights under CPL 160.50.
The court also views the waiver required by the District Attorney as inconsistent with the intent and thrust of CPL 160.50. The purpose of this enactment was stated by Governor Carey, as follows when he approved CPL 160.50 (NY Legis Ann, 1976, pp 408-409).
“The bill * * * is designed to protect the rights of individuals against whom criminal charges have been brought, but which did not ultimately result in a conviction.
*108 “The bill provides for the return of fingerprints and photos, and the sealing of arrest records in all criminal cases terminated in favor of the accused, unless another criminal action is pending, or unless the district attorney can demonstrate that the interests of justice require otherwise * * *
“This legislation is consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law.”
The insistence by the District Attorney of a prior waiver significantly erodes the function of CPL 160.50. As such, it is inconsistent therewith.
The waiver becomes particularly inconsistent with CPL 160.50 and inappropriate when one considers the fact that under the provisions of the statute (CPL 160.50, subd 1) the District Attorney may resist the return of the prints and the sealing of the record despite termination of a criminal action in favor of a defendant “upon motion with not less than five days notice * * * [which] demonstrates to the satisfaction of the court that the interests of justice require otherwise”.
The motions on behalf of those defendants, who initially were charged with misdemeanors but pleaded guilty to violations, in full discharge of all charges against them, is more difficult to resolve because of the varying decisions on the subject.
Analysis of this issue must begin with Dwyer u Guido (54 AD2d 956). That case was decided under former section 79-e of the Civil Rights Law, the predecessor to CPL 160.50 regarding the return of fingerprints to accused individuals who are ultimately not convicted of criminal misconduct.
In Dwyer (supra) the defendant was arrested and charged with harassment (a violation), resisting arrest (a misdemeanor), and violating section 1157 of the Vehicle and Traffic Law (a traffic infraction). The defendant pleaded guilty to harassment, and the other charges were dismissed. The Appellate Division agreed with the Supreme Court, Nassau County, that the defendant was *109 entitled to the return of the fingerprints and photographs taken at the time of his arrest and stated {Dwyer v Guido, supra, p 957): “Only the charge of resisting arrest, a misdemeanor, permitted the police to take petitioner’s fingerprints and photographs. The dismissal of that charge was certainly a favorable and final determination in favor of petitioner.”
But, since the enactment of CPL 160.50 cases involving factual circumstances similar to those in Dwyer (supra) and the case at bar, have been decided in varying ways. Those cases can be divided into three categories. In one category are those cases where the courts in reliance upon Dwyer and upon a reading of the legislative intent respecting CPL 160.50 as one which sought to expand the protections of section 79-e of the Civil Rights Law, have granted the defendant’s motion in all respects. Such courts have not only returned defendant’s fingerprints, photographs and palmprints but they have ordered the sealing of the records pursuant to CPL 160.50. (See People v Miller, 90 Misc 2d 399; People v Hyll, 90 Misc 2d 101; People v Flores, 90 Misc 2d 190.)
In a second category are those courts that seek to apply the interpretation of the Dwyer decision to the new statute but do not choose to expand upon Dwyer (supra) in a way that might impose additional burdens upon the court administrators or the District Attorney’s office. Such courts have granted defendant’s motion to return all fingerprints, photographs, and palmprints but have refused to grant their applications to seal the records. (See People v Miller, 90 Misc 2d 399, supra.)
In the third category are those cases which regard the Dwyer case as uncontrolling by virtue of its having been decided under the earlier statute. These courts read CPL 160.50 strictly and conclude that, by its terms, a criminal proceeding cannot be considered as having been terminated favorably to defendants who plead guilty to even a “nonprintable” offense. (See People v Casella, 90 Misc 2d 442; People v Blackman, 90 Misc 2d 977.)
This court is persuaded that the third category of cases most accurately reflects the intent and purpose of CPL 160.50. Both the predecessor law, section 79-e of the *110 Civil Rights Law, and the current statute, CPL 160.50, contemplated the return of prints where there had been a determination in favor of the defendant. But CPL 160.50 is distinguished by the fact that it spells out with particularity those instances that will be deemed determinations in favor of the defendant. They are set forth in CPL 160.50 (subd 2) and include the following: an order dismissing the accusatory instrument (pursuant to CPL art 470, dealing with appeals); an order dismissing the accusatory instrument based on various grounds (CPL 170.30, 170.50, 210.20, 210.46) or adjournment in contemplation of dismissal (CPL 170.55,170.56); verdicts of complete acquittal (CPL 330.10); a trial order of dismissal (CPL 290.10, 360.40); an order setting aside the verdict (pursuant to CPL 330.30, 370.10); an order vacating a judgment (CPL 440.10), or an order of discharge pursuant to CPLR article 70 (habeas corpus).
A plea to a violation in satisfaction of a misdemeanor charge is not one of the enumerated situations which constitutes a termination in favor of the defendant. In view of the specificity of the language, no construction is necessary and it is the duty of the court to adhere to the terms of the statute.
Again, it is useful to consider the Governor’s message, accompanying his approval of CPL 160.50, as a reflection of the intent of the statute. “The bill,” he stated “is designed to protect the rights of individuals against whom criminal charges have been brought, but which did not ultimately result in conviction.” (NY Legis Ann, 1976, p 408.)
The defendants who pleaded guilty to the violations were not ultimately exonerated, though not convicted of the misdemeanors. This court does not conclude that CPL 160.50 mandates the return of prints and the sealing of records of defendants who have pleaded guilty to violations, in discharge of all charges including misdemeanors. For these reasons the motions of the defendants Angelo, Peter and Vincent Ricci to return their fingerprints, palm-prints and photographs and to seal their records is denied.
The defendants Erminia and Americo Ricci shall submit appropriate orders, on notice to the District Attorney pur *111 suant to CPL 160.50 to implement the return of their prints and the sealing of their records.