**Roosevelt HORNE, Plaintiff,**

v.

**Court Officer Joseph PANE, Defendant.**

**No. 80 Civ. 2381.**

United States District Court,
S. D. New York.

May 20, 1981.

Silvera, Brooks & Latimer, New York City, for plaintiff by Trevor Brooks, New York City.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for defendant by Ann Horowitz, Deputy Asst. Atty. Gen., New York City.

## MEMORANDUM AND ORDER

KNAPP, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1981. Plaintiff claims that on September 15, 1978 defendant, acting in his capacity as a court officer of Brooklyn Criminal Court and under color of State law, "subjected the plaintiff to unlawful assault and battery, and did unlawfully arrest and detain plaintiff, thereby depriving him of his rights as secured by the Constitution and laws of the United States and by the Constitution and laws of New York." (Complaint, ¶ 23.)

552

The parties disagree drastically as to the circumstances which led to plaintiff's arrest on that date. Plaintiff claims that while he was working as a custodial employee in Brooklyn Criminal Court, defendant, without any provocation, verbally abused him on account of his race, tore his shirt, twisted his arm, beat him, handcuffed him, placed him under arrest, and kept him handcuffed to a chair for over five hours.

Defendant's version, as set forth in paragraph 2 of an affidavit dated January 27, 1981, is substantially different:

"On September 15, 1978 I was assigned to the Criminal Court, Kings County, the AP–7 courtroom. At about 10:15 A.M. an individual later identified as Roosevelt Horne entered the AP–7 courtroom. He was wearing a baseball cap. I asked him several times to remove the baseball cap from his head, and he repeatedly refused. I then asked him to step outside the courtroom to identify himself. Once outside the courtroom, he stated that he was a custodial employee, but refused to state his name or show an identification card upon being asked to do so. I then asked him to accompany me to the Captain's office so that we could contact the custodial staff. He complied with that request. When his supervisor arrived at the Captain's office, I began to describe Mr. Horne's uncooperative behavior. At this point the plaintiff suddenly attacked me. Captain O'Leary and I were both injured in the course of restraining Mr. Horne, and used only such force as was reasonable and necessary to restrain him."

It is undisputed that following the September 15 encounter between the parties, whatever its precise nature, plaintiff was charged with assault and disorderly conduct under Sections 120.05 and 240.20 of the New York Penal Code; and that on July 12, 1979 these charges were adjourned in contemplation of dismissal in light of plaintiff having executed the following agreement:

"I, ROOSEVELT HORN [sic], agree to hold Uniformed Court Officer JOSEPH PANE and all other Uniformed Court Personnel and the City of New York harmless and agree to not pursue any civil remedy for the events on September 15, 1978 at about 10:15 a. m. or any claims stemming therefrom."

It is further undisputed that the charges pending against plaintiff were adjourned in contemplation of dismissal only because he had consented to execute the above-quoted agreement; and that plaintiff's counsel had advised him to execute it.

■ Defendant has now moved for summary judgment on the ground that this agreement bars plaintiff's § 1981 action. We disagree, and deny the motion.

The basic question before us was squarely decided by the Ninth Circuit Court of Appeals in *MacDonald v. Musick* (9th Cir. 1970) 425 F.2d 373. The Court there observed (at 375):

"It is no part of the proper duty of a prosecutor to use a criminal prosecution to forestall a civil proceeding by the defendant against policemen, even where the civil case arises from the events that are also the basis for the criminal charge. We do not mean that the prosecutor cannot present such a criminal charge. *What he cannot do is condition a voluntary dismissal of a charge upon a stipulation by the defendant that is designed to forestall the latter's civil case.*" (Emphasis supplied.)

■ We concur in these views. It seems to us beyond question that a criminal defendant forced to choose between being prosecuted on criminal charges on the one hand, and not being prosecuted but giving up certain constitutionally guaranteed civil rights on the other, cannot as a matter of law make an uncoerced choice.

It is true that at least one New York court has suggested, by way of dictum, that "a defendant in a criminal action may knowingly, voluntarily and intelligently offer a release or relinquishment of civil remedies during plea bargaining negotiations." *Dziuma v. Korvettes* (1st Dep't 1978) 61 A.D.2d 677, 679, 403 N.Y.S.2d 269, 270. We cannot accept that proposition. See also *Boyd v. Adams* (7th Cir. 1975) 513 F.2d 83, 88.

We are, of course, aware of the recent decision of the California Supreme Court in *Hoines v. Barney's Club, Inc.* (1980) 28 Cal.3d 603, 170 Cal.Rptr. 42, 620 P.2d 628, upholding the validity of an agreement not to sue conditioned upon the dropping of criminal charges. We respectfully disagree with that Court's conclusion. Instead, we find persuasive Justice Tobriner's forceful dissent, in which Chief Justice Bird and Justice Newman concurred, arguing that the principle set forth in *MacDonald v. Musick, supra*, should have been deemed to be controlling.

Defendant's motion for summary judgment is denied. Defendant's second defense, which is based on plaintiff's agreement of July 12, 1979, is stricken.

So Ordered.